PRESIDENT AND TRUSTEES OF BOWDOIN COLLEGE et al. v. MERRITT et al.

(Circuit Court, N. D. California.    February 3, 1893.)

1. CONTRACTS—VALIDITY—PROMISE NOT TO CONTEST A WILL.
    Certain heirs of a deceased testator, in consideration of property valued at about $500,000, conveyed by deed to the testator's sister, who was the principal legatee and devisee, all the property of which the testator died seised or possessed, promising not to dispute or contest any disposition of the said property, "or of any property which may be acquired therefrom or thereby," made or to be made by her, either by deed or by will. *Held,* that the agreement applied only to the property which she derived from the estate of the deceased testator, and not to any other property which she might own at the time of her death, and was valid and upon sufficient consideration, since it was not a contract by which the promisors renounced their status as her heirs.

2. FEDERAL COURTS—FOLLOWING STATE PRACTICE.
    Civil Code Cal. § 863, providing that every express trust in real property vests the whole estate in the trustees, subject only to the execution of the trust, and that the beneficiaries take no estate or interest in the property, but may enforce the performance of the trust, does not deprive a federal court, sitting in equity, in California, of jurisdiction of a suit by beneficiaries to remove a cloud on the legal title.

3. TRUSTS—BENEFICIARIES.
    Where trustees neglect to defend their legal title to the trust property the beneficiaries may do so, and may sue to remove a cloud on the title, although the trust deed gives the trustees uncontrolled discretion for five years in executing the trust.

4. SAME—PARTIES.
    Such a suit can be maintained by some of the beneficiaries without joining others as parties, when the court can do justice to the parties before it without injury to such others.

In Equity. Bill by the President and Trustees of Bowdoin College and others against James P. Merritt, Frederick A. Merritt, and others to remove a cloud on the title to certain property in which the complainants are interested as beneficiaries. Heard on demurrer. Overruled.

Statement by HAWLEY, District Judge.

This is a suit in equity brought by the President and Trustees of Bowdoin College, a corporation, and 50 different individuals, suing in behalf of themselves and of all other beneficiaries of the trust deed made and executed by the late Catherine M. Garcelon to John A. Stanly and Stephen W. Purrington who may chose to come in and unite with them in the prosecution of this suit, against J. P. Merritt and F. A. Merritt, the real defendants, and Thomas Prather and William E. Dargie, who are interested under contracts and powers of attorney from the Merritts, and John A. Stanly and Stephen W. Purrington, as trustees under and by virtue of the deed of trust set forth in the bill of complaint, bearing date April 21, 1891. The corporation known as the "President and Trustees of Bowdoin College" is alleged to be duly organized and existing under the laws of the state of Maine, and is a citizen and resident of said state. The other complainants are alleged to be citizens and residents, respectively, of certain named states, and none of them are citizens or residents of the state of California. The defendants are all citizens and residents of the state of California.

The bill is quite lengthy. It alleges, among many other things, that on the 17th of August, 1890, Samuel Merritt died testate, seised of a large estate consisting of real and personal property. That his only heirs at law were his sister, Mrs. Catherine M. Garcelon, and his nephews, J. P. and F. A. Merritt. That he gave to each of his nephews a legacy of $500 per annum for a period of 10 years, and bequeathed and devised the great bulk of his estate to his sister, Catherine M. Garcelon. That on the 15th of September, 1890, the will of Samuel Merritt was duly probated. That the nephews, being dissatisfied with the provisions of the will, threatened to institute and prosecute a contest of said will upon the grounds that the said Samuel Merritt was unduly prejudiced and influenced against them. That an attorney was employed by them to represent their interests, and to negotiate with the said Catherine M. Garcelon for a compromise, settlement, and adjustment of their rights in and to all of the estate, real and personal, of which the said Samuel Merritt was seised or possessed at the time of his death. That such negotiations were carried on, and resulted, on the 14th of November, 1890, in a compromise agreement and family arrangement duly executed in writing. That thereafter, and between the said 14th day of November, 1890, and the 20th day of February, 1891, the said Catherine M. Garcelon did fully perform each and every promise and agreement made by her in and by said contract bearing date November 14, 1890, by paying the said J. P. Merritt and F. A. Merritt the full sum of $125,000, and by paying to J. N. Knowles, who had been agreed upon as trustee by the said Catherine M. Garcelon and the said J. P. Merritt and F. A. Merritt, the further sum of $6,150, and by conveying to said Knowles, as trustee, for the use and benefit of the said J. P. Merritt and F. A. Merritt, several pieces and parcels of real estate, of the estimated and appraised value of $368,850. That as a part of said settlement, covenants, and contracts it was expressly stipulated that the nephews, J. P. and F. A. Merritt, should convey to said Catherine M. Garcelon all the estate, real and personal, of which the said Samuel Merritt died seised or possessed, and specially all interest in said property, real and personal, which the said J. P. and F. A. Merritt, or either of them, might have had or claimed if the said Samuel Merritt had died intestate. That in pursuance of said stipulation the defendants J. P. and F. A. Merritt did, on the 14th of November, 1890, execute, acknowledge, and deliver a certain deed to the said Catherine M. Garcelon, in and by which the said J. P. and F. A. Merritt did convey to her all the property, real and personal, of which the said Samuel Merritt died seised or possessed, and which deed contains the following covenants and agreements, viz.:

"And for the consideration aforesaid we do jointly and severally agree, for ourselves and for our heirs, to warrant and defend the title of the said Catherine M. Garcelon, and her devisees, legatees, and assigns, against any and all claim to the property aforesaid, and every part and parcel thereof, to be made by us or either of us, or by our heirs or the heirs of either of us, or by any one claiming or to claim by, through, or under us or either of us, saving and excepting only such claim as we or either of us may hereafter be able legally to assert as devisee or devisees, legatee or legatees, under the last will and testament of the said Catherine M. Garcelon.     And for the consideration aforesaid we do hereby jointly and severally covenant, promise, and agree, for ourselves and each of our heirs, to and with the said Catherine M. Garcelon, her heirs, devisees, legatees, executors, administrators, and assigns, that neither we, nor either of us, nor the heirs of either of us, shall or will in any manner or to any extent, question, dispute, or contest any disposition of the property above mentioned or referred to, or any part thereof, or of any property which may be acquired therefrom or thereby, which the said Catherine M. Garcelon may have made or may hereafter make, either by deed or by her last will and testament. And for the consideration aforesaid we do each hereby forever release and discharge the said Catherine M. Garcelon of and from all obligation to make any other and further property provision for us, or either of us, by reason of the contingency that either of us may be one of her heirs at law, hereby acknowledging that she has already made all such provision that is reasonable and just, and to our satisfaction."

That it was further stipulated to the end of securing to said Catherine M. Garcelon the right to dispose, by will or deed, of all the property derived by her from the estate of the said Samuel Merritt, free from any right of the said J. P. Merritt and F. A. Merritt to dispute or question or contest the legality or validity of such disposition, by reason that they might be her heirs at law at the time of her death. That for the purpose of carrying into effect such stipulation and agreement. the counsel for the said J. P. and F. A. Merritt and of the said Catherine M. Garcelon did prepare a certain writing to be executed by the said Merritts, in and by which they were to covenant to and with the said Catherine M. Garcelon that they, nor either of them, nor their respective heirs, should, or would at any time thereafter, assert any right, title, or interest as heirs or heirs at law of the said Catherine M. Garcelon to the property, real or personal, derived by her under the last will and testament of the said Samuel Merritt, and the same was fully, fairly, and perfectly explained to the said J. P. Merritt and F. A. Merritt by their said counsel; and after such explanation, and with full knowledge of the purpose and effect thereof, the same was executed by the said J. P. Merritt and F. A. Merritt contemporaneously with the execution of said agreement bearing date November 14, 1890. That one of the leading motives and inducements which caused the said Catherine M. Garcelon to entertain any proposition for the compromise and settlement of the alleged claim of the said nephews to any part of the estate of the said Samuel Merritt was her earnest desire to avoid and prevent a family scandal, which might seriously affect their future prospects in life. That on the 21st of April, 1891, the said Catherine M. Garcelon made, executed, acknowledged, and delivered to the defendants Stephen W. Purrington and John A. Stanly a deed of conveyance, an assignment and transfer of a large amount of real estate and personal property, in all of the aggregate value of $1,200,000. That all of said property, real and personal, was and constituted a part of the estate of the said Samuel Merritt, and was derived by the said Catherine M. Garcelon therefrom. That on the same day the said Catherine M. Garcelon and the said Stephen W. Purrington and John A. Stanly made, executed, and acknowledged a certain declaration of trust, declaring and specifying the trusts upon which the aforementioned deed of conveyance and assignment were made by the said Catherine M. Garcelon, and accepted by the said Stanly and Purrington. That according to said declaration of trust, after payment by the said trustees of the sum of $211,300, in the aggregate, to a great many individual beneficiaries, including all the complainants other than the President and Trustees of Bowdoin College, the said trustees were directed, after the conversion of the estate into money or interest-bearing

securities, to divide the residue of said trust property into two unequal parts
of six tenths and four tenths each, and to pay to complainants the President
and Trustees of Bowdoin College the four-tenths part thereof, and to pay the
remaining six tenths thereof to the trustees of the Samuel Merritt Hospital.
That by virtue of said declaration of trust, the President and Trustees of
Bowdoin College are directly interested in the proper administration of said
trust, and in the trust property being made to produce all that the same is
worth. That, upon the execution of the above-mentioned deed of conveyance
and assignment, the said trustees, Stephen W. Purrington and John A. Stanly,
entered into and upon the possession of all the real estate and personal prop-
erty therein mentioned and described, and have continuously been, and still
are, in possession thereof, and in receipt of the rents, income, and profits
thereof. That the said Catherine M. Garcelon died on the 29th day of Decem-
ber, 1891. That immediately after her death the defendants J. P. Merritt
and F. A. Merritt caused it to be publicly given out that they were about to
contest and dispute the disposition which Catherine M. Garcelon had made of
her property by the deed, assignment, and declaration of trust bearing date
April 21, 1891, and had employed, or were about to employ, counsel to that
end, and that they were about to or had formed a syndicate or combination
of men of wealth or influence, who, for a contingent interest in the result of
the proposed contest, would furnish them with money with which to prosecute
such contest, and guaranty them from all loss they might incur by reason of
a possible forfeiture of their interest in property conveyed to Knowles in trust
for them. That ever since the death of the said Catherine M. Garcelon the
defendants F. A. Merritt and J. P. Merritt have, in violation of their
repeated covenants and promises, hereinbefore alleged, questioned and dis-
puted the validity of the dispositions of the properties as made by the said
Catherine M. Garcelon by the said trust deed, and asserted and claimed that
they, as heirs at law of the said Catherine M. Garcelon, own and are entitled
to all of said property in fee simple, and have claimed and do claim the own-
ership thereof, adversely to the title of said trustees and to the rights of the
beneficiaries thereunder. That, unless they be restrained by the order and de-
cree of this court, they threaten to and will continue to question, dispute, and
contest the said disposition of said property by the said Catherine M. Garcelon.
That by reason of the acts of J. P. Merritt and F. A. Merritt, and their con-
federates acting for them and in their interest, it will be impossible for the
defendants Stephen W. Purrington and John A. Stanly to sell the real estate
as long as there is a possibility and threat of the legality or validity of the
deed under which they hold said property being questioned, disputed, or con-
tested; that a large part of the real estate embraced in said trust is unim-
proved and nonproductive property, and is a constant source of expense;
and that the keeping of the same by the trustees will result to the great im-
pairing of the trust estate. That the trustees, Stephen W. Purrington and
John A. Stanly, have been requested to institute a suit to quiet their title to
the real estate conveyed to them in trust, and to secure a perpetual injunction
restraining defendants from violating their repeated covenants, promises,
and agreements made with Catherine M. Garcelon, and to secure a specific
performance of said covenants, promises, and agreements. That said Purring-
ton and Stanly have refused to do so, and that by reason of such refusal
complainants are compelled to institute this suit in their own behalf, and in
behalf of all other beneficiaries of said trust who may elect to join herein.

Blake, Williams & Harrison and John Garber, for complainants.
Horace W. Philbrook, Jas. C. Martin, A. A. Moore, and George
R. B. Hayes, for respondents.

HAWLEY, District Judge, (orally.) My conclusions are that,
when all the facts alleged in the bill, including the exhibits in-
corporated in or attached to the bill, and made part thereof, are
considered, it affirmatively appears that the subject of the entire
negotiation between Catherine M. Garcelon and her nephews, James

P. and Frederick A. Merritt, was the real and personal property which was owned by Samuel Merritt at the time of his death; that the sole contention between the parties which resulted in the compromise was in relation to this specific property; that the contracts, conveyances, and promises made by them had reference to this property, and to no other; that the references therein made to the property which Mrs. Garcelon now owns or may hereafter acquire, either by deed or last will and testament, was intended, and must have been understood by the parties, as having reference to the property which she derived from the estate of Samuel Merritt, deceased, and not as having reference to any other property which she might own or possess at the time of her death, and that it should not be treated, as claimed by defendants J. P. Merritt and F. A. Merritt, as a contract and agreement renouncing their status as heirs of Mrs. Garcelon, and, if right in this conclusion, it would, in my opinion, necessarily follow from the averments in the bill that the contracts and agreements were valid, and made upon sufficient consideration. I am of opinion that this court has jurisdiction to enforce the covenants and agreements entered into by the said J. P. and F. A. Merritt with Mrs. Garcelon, and that the beneficiaries of the trust have such an interest in the performance of the trust as enables them to maintain this suit. The remedies in the courts of the United States are to be according to the practice and principles of equity jurisdiction as established in English jurisprudence, and the rules and decisions are the same in all the states. Defendants rely upon the provisions of section 863 of the Civil Code of California, which reads as follows:

"Every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."

If this section is controlling upon this court, it is only so to the effect of declaring that complainants have no title in the property, either legal or equitable. It is conceded by defendants' counsel that they have an equity in the proceeds of the trust property, and they are certainly interested in the performance of the trust.

It is claimed that under the declaration of trust the trustees have an uncontrollable discretion for five years to take, or abstain from taking, any steps they please towards the execution of the trust. The trust deed, however, provides—

"That immediately after the expiration of said fifteen years from the date hereof, or immediately after the death of the party of the first part hereto, should such death sooner occur, the parties of the second part hereto, or their successor or successors in this trust, shall proceed, with all the dispatch that in their uncontrolled discretion the interest of the trust estate will permit, (but within five years from and after the end of said fifteen years, or from and after the death of the party of the first part,) to convert the whole of said trust estate into money or interest-bearing securities or savings-bank deposits."

By the acts of the defendants J. P. and F. A. Merritt the trustees are deprived of the uncontrollable discretion given by the trust deed.

It is claimed by defendants that the bill fails to state a cause of action for removing a cloud on the title of the trustees, or for quieting the title. The complainants in this action are not seeking this relief upon the ground that they have any legal title to the property to be quieted. What they do claim is that the title and possession of the property is in the defendants Stanly and Purrington, and that it is held by them in trust for complainants, and for their benefit; and it is this title and this possession which it is sought in this suit to have quieted, and the cloud created thereon by the acts of the defendants J. P. and F. A. Merritt removed therefrom. If the beneficiary of a trust is allowed to go into court to enforce the performance of the trust and to protect the trust property, then it must necessarily follow that he is entitled to the advantage and benefit of every position which could be taken or maintained by the trustees themselves if they had instituted the suit in their own names. It would be idle to hold that the cestui que trust could maintain an action to "enforce the performance of the trust," and then to declare that in order to remove or dissipate any cloud upon the title to the property, or to do any other act or procure any decree necessary for the enforcement of the trust, it must first appear that he has a legal title to the property. The suit, in my judgment, is sustainable upon the ground that the beneficiaries of the trust are entitled to the same rights, privileges, and decrees that their trustees would have been entitled to if the suit had been instituted in their own names. The trustees had the right to bring the suit, and, if brought by them, full relief could have been granted. They refused to do so. The beneficiaries under the trust therefore claim the right to do what the trustees have declined to do; any judgment or decree which they may be able to secure will simply be such as the trustees would have been entitled to if they themselves had instituted the suit. The beneficiaries of the trust are not required to stand idly by when the property is threatened with injurious litigation, or by the assertion of wrongful and illegal claims thereto; but they have the right, in my opinion, to appeal directly to a court of equity for the protection of the property, in order to prevent their rights from disturbance or destruction. They are not required to await the action of their trustees. If the trustees decline to take any steps to protect the property they will be permitted to act themselves. If, therefore, this suit is to be treated as one to remove a cloud upon or quiet the title to the property, I am of opinion that it can be maintained.

In support of the conclusions I have reached I shall only refer to a few cases. In the Baptist Church v. Branham, 90 Cal. 22, 27 Pac. Rep. 60, the court held that, where the trustees of a corporation hold property in trust for its uses, their ownership and possession is the ownership and possession of the corporation, and the corporation has a sufficient interest in the property to bring an action in its corporate name to quiet title thereto, and to restrain by injunction a threatened interference with the possession. And in the course of the opinion it is said:

"While the dry, naked, legal title to the property may not be in plaintiff, yet its trustees hold it in trust for the uses of plaintiff, and their ownership and possession is the ownership and possession of the plaintiff. We cannot understand how it is material to the interests of defendants in the action whether the plaintiff or its trustees is technically seised of the legal title to this realty; the plaintiff certainly has sufficient interest to bring this action."

In *Fleming v. Holt*, 12 W. Va. 143, the court held that the cestui que trust might bring a suit in equity for the specific execution of a contract, made by a third party with the trustee in a deed of trust, for the purchase of a tract of land conveyed by the deed of trust, and make the trustee and purchaser of the land and grantor in the deed of trust defendants. The court in its opinion said:

"The trustee holding the legal title must be made a party in a suit in equity concerning the trust subject, and the cestui que trust must generally be also made parties. But it is very often regarded by a court of equity, though never by a court of law, that it is immaterial whether a particular party in certain cases is made a plaintiff or defendant. In the present case it seems to me immaterial whether the trustee, Conrad, was a party plaintiff or defendant. In suits of this character he has frequently been made a party defendant without the bill's assigning any reason why he was not made a plaintiff. Thus in Cope v. Parry, 2 Jac. & W. 538, Cope made a covenant with Jones, a trustee, to convey certain property to him in trust for certain parties. They instituted a suit against Cope's assignees to enforce a specific performance of Cope's covenant with their trustee, but they not only did not join the trustee, Jones, as a coplaintiff with them, but did not even make him a defendant. The court did not dismiss the bill on that account, but simply required the plaintiffs, the cestui que trust, to make the trustee, Jones, a party defendant. In Hook v. Kinnear, 3 Swanst. Ch. 417, it was contended by counsel 'that a chancery court never decrees a specific execution of an agreement but at the instance of the party with whom the contract was made.' But the lord chancellor in his decision says: 'It is certain that, if one person enters into an agreement with another for the benefit of a third person, such third person may come into a court of equity and compel a specific performance.' And this point was so expressly decided in Cooke v. Cooke, 2 Vern. 36. While the trustee, Conrad, might more appropriately have joined with the cestui que trust, Linn's administrator, as one of the plaintiffs in this cause, still, as he has been made a defendant, this is sufficient."

In *Grant v. Insurance Co.*, 121 U. S. 112, 7 Sup. Ct. Rep. 841, the supreme court said:

"The objection made is that the bill does not show a right in the plaintiff to maintain the suit; that each trustee vests in its trustees a legal title to the property covered by it, with power to sell; that the interest of the cestui que trust is represented by the trustees, who must enforce the trust; and that unless the bill shows a failure on their part to do so, through incapacity or otherwise, the cestui que trust has no standing in court in its own right. The bill alleges that in 12 of the deeds of trust executed January 1, 1872, to Gallaudet and Paine as trustees, the length of notice of the time and place of sale by advertisement is left blank; that this would prevent the trustees from executing such power of sale, but that in a court of equity the deeds would be considered as mortgages. It is urged on the part of Grant that this defective power of sale renders it the more necessary that the trustees, rather than the cestui que trust, should act, in either seeking a correction of the defect or in enforcing the trust; but we think there is nothing in the objection thus raised. The case is one clearly of equity cognizance, for the reasons above set forth, and those contained in the opinion of the general term, above quoted. No objection is made on the part of any of the trustees to the maintenance of the suit. The bill is taken as confessed as to all of them, and there is no

possible prejudice to the defendant Grant in the bringing of the bill in its actual shape by the cestui que trust."

In Harrison v. Rowan, 4 Wash. C. C. 206, Justice Washington, in delivering the opinion of the court, in a case where the trustee and others claiming the benefit of the trust were joined as plaintiffs, said:

"That the trustee might maintain an ejectment against the defendants to recover the possession of the lands now in controversy, on the trial of which suit the validity of the disputed will might, and necessarily would, be decided, cannot be denied; nor does the court think it necessary to decide whether, were this suit brought by the trustee alone, he would or would not be entitled to the relief prayed for. The real plaintiffs in this cause are those who claim a beneficial equitable interest in the land devised by the will, and it will not, nor has it been, denied that the court of chancery has a clear, original jurisdiction in such a case. Not only so, but that jurisdiction is exclusive; the cestui que trust having no remedy at common law, either against the trustee, or against any other person holding adversely the fund charged with the trust. It is true, as has been observed, that the trustee has a remedy at law to recover the possession, and thus to enable him to execute the trust. But are the cestuis que trusts obliged to wait until this course has been pursued? They are at all times competent to assert their equitable demands, however well or ill inclined the trustee may be to perform his duty. It was not, indeed, denied by the defendants' counsel but that this bill might have been maintained by those persons if the trustee had been a defendant in the cause, but it seemed to be supposed that this acknowledged equity is tainted by the co-operation of the trustee. If, indeed, there was any weight in this argument, the court would dismiss the bill as to the trustee; but surely it could afford no good reason for dismissing it as to the other plaintiffs, who can claim relief nowhere but in equity. But there is in reality nothing in the objection. The jurisdiction of the court of chancery, upon the application of a cestui que trust, to enable the trustee to execute the trust, and to compel him to do so, stands upon the same ground. In both cases the trustee must be a party to the suit, either as plaintiff or defendant, in order that he may be bound by the decree, and that the cestui que trust may thereby have the full benefit of it."

The objection made by the demurrer that certain beneficiaries of the trust, some of whom are shown by the bill to be residents of the state of California, are not made parties, does not deprive complainants of the right to maintain this action. The rule applicable to this question is clearly stated by the supreme court in Hotel Co. v. Wade, 97 U. S. 20, as follows:

"Holders of such securities, otherwise entitled to sue in the circuit court to foreclose the mortgage or trust deed, are not compelled to join as respondents other holders of similar securities, if resident in other states, even if they refuse to unite as complainants, as the effect would be to oust the jurisdiction of the court. Cases of the kind frequently arise, and the rule is that such a party, if he refuses to unite with the complainant, may be omitted as a respondent, unless it appears that his rights would be prejudicially affected by the decree. But it is suggested that the proper parties for a decree are not before the court, as the bill of complaint shows that there are other holders of the securities besides the complainants. It is true, beyond doubt, that all persons materially interested in the fund to be distributed should be made parties to the litigation; but this rule, like all general rules, will yield whenever it becomes necessary that it should be modified in order to accomplish the ends of justice. Authorities everywhere agree that exceptions exist to the general rule; and this court decided that the general rule will yield if the court is able to proceed to a decree, and do justice to the parties before the court, without injury to others not made parties, who are equally interested in the litigation. Payne v. Hook, 7 Wall. 425."

Numerous authorities might be cited to the same effect.

In the consideration given to this case I have confined myself to the questions relating to the real estate only. If upon the trial of the case it should, from any cause, appear that the personal property should be more definitely described, leave to amend in that particular will, of course, be granted. The demurrer is overruled.